## Case No. 8,961.

MAGOUN v. NEW ENGLAND MARINE INS. CO.

[1 Story, 157;[1] 3 Law Rep. 127.]

Circuit Court, D. Massachusetts. May Term, 1840.

MARINE INSURANCE—CAUSA PROXIMA—CONDEMNATION—PROHIBITED TRADE—SENTENCE OF FOREIGN COURT—LIABILITY.

1. The maxim, "Causa proxima, non remota, spectatur," does not exclude incidental losses following as a natural, or legal consequence of peril, insured against and properly attributable thereto. Thus, in case of a capture, if, before the vessel is delivered from that peril, she is lost by fire or accident or negligence of the captors, the whole loss is attributable to the capture.

[Cited in Dole v. New England Mut. Marine Ins. Co., Case No. 3,966.]
[Cited in McCargo v. New Orleans Ins. Co., 10 Rob. (La.) 202; Dole v. Merchants' Mut. Marine Ins. Co., 51 Me. 473; De Rothschilds v. Auditor, 22 Grat. 48; Brown v. St. Nicholas Ins. Co., 61 N. Y. 340.]

2. It is not necessary, that there should be a justifiable cause of condemnation, but only a probable cause of seizure, to bring a case within the exception in the Boston policies, with regard to seizure on account of illicit or prohibited trade.

3. The sentence of acquittal of a foreign court acting in rem, in cases of revenue, seizure, and prize, is conclusive, except in cases of fraud. Concealment of facts affords no ground to avoid the sentence of a foreign court, acting in rem, whether it be a sentence of acquittal or of condemnation.

[Cited in Allen v. Blunt, Case No. 217; Cushing v. Laird, 107 U. S. 80, 2 Sup. Ct. 204.]

4. Quaere. Whether such a sentence would be open to a reëxamination, upon the ground of false swearing in the case by the agents of the interested parties.

5. A vessel was seized in a foreign port by the custom house officers, for an alleged violation of the revenue laws, and upon trial the court affirmed, that there was no justifiable ground for the seizure, and the vessel was restored. But from long exposure, in consequence of these proceedings, it was found, that she could not perform her voyage home without great repairs, amounting to more than her value. She was accordingly abandoned to the underwriters, and in an action against them, it was *held*, that the abandonment was good, and the underwriters were liable for a total loss.

---

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

[1] [Reported by William W. Story, Esq.]

This was the case of a policy of insurance, underwritten by the defendants, on the 20th of March, 1838, whereby they insured the plaintiff [David C. Magoun], for whom it concerns, payment to him, four thousand dollars on the schooner Yankee, and on her freight, at and from St. Thomas to Rio de la Hache, and at and from thence to New York, viz. $3200 on the schooner and $800 on the freight, against the usual risks in the Boston policies. The declaration alleged a total loss by the arrest and detainment by the authorities of the Republic of New Grenada, and also a total loss by the peril of the seas. The parties agreed to a statement of the substantial facts, which was as follows: The schooner proceeded from St. Thomas to Rio de la Hache, in ballast, under a charter party, to take on board a cargo of hides and logwood at the latter port, to be carried to New York, for the freight of which $600 was to be paid. A cargo was accordingly taken on board at Rio de la Hache, about the 7th of March, 1838, and the schooner, being then ready for sea, the master applied for a clearance, which was refused, and he was arrested and imprisoned, and his vessel was seized and forcibly taken possession of by the local authorities. The asserted ground of the arrest of the master and the seizure of the vessel was, on account of a supposed illicit and prohibited trade. It appears, that about the time, when the vessel was about to sail, six bags of beans were supposed to have been landed in a canoe from the schooner, without a permit, they being of the value of about $25. The beans were seized on shore by the custom house officers; and afterwards, on searching the schooner, they found certain bags of beans of her stores were missing; and thereupon they arrested the master, and seized the schooner as forfeited, presuming that the missing beans were those illegally landed. Proceedings were duly had against the vessel, in the proper tribunal of the district of Magdalena; and on the 23d of May, 1838, a sentence was pronounced, confiscating the beans seized and the canoe, condemning the master to pay $25, the value of the beans found missing from his vessel, and the costs of suit, but acquitting the vessel. Up to the time of this decree, the master was held in imprisonment. From this sentence an appeal was taken to the superior tribunal of the republic, at Carthagena, where a sentence was pronounced on the 25th of July, 1838, by which the sentence of the court below, as to the acquittal of the vessel and the condemnation of the beans, was affirmed; but was reversed as to the canoe, on account of the value of the beans not being sufficient to justify the confiscation thereof. The sentence then proceeded to declare, that the master was guilty of a fraud in allowing the landing of five bags of beans from the schooner without a permit; but that the fraud not being to the value of fifty dollars, the vessel was not subject to any forfeiture therefor; and it then directed, that the master should pay the value of the five bags of beans landed, viz. $25, and condemned the judge below to the payment of costs. The vessel was accordingly restored; but when restored, it was found, from her long exposure to the weather in a hot climate, in an open roadstead, that her hull and sails and rigging were so much injured, that she could not, without very great repairs, be enabled to perform the voyage; that the repairs could not be made at Rio de la Hache, or at any other port, to which the vessel could proceed; and that the repairs would cost more than the vessel was worth; that the hides belonging to the cargo had become rotten, and were thrown overboard; and that no other vessel could be found at the port to carry the residue of the cargo to New York. Under these circumstances, the master refused to receive back the vessel without indemnity, and abandoned her. On the 8th of October, the plaintiff, as soon as he received information of the facts, abandoned the vessel and freight to the underwriters, who refused to accept the abandonment.

The cause was argued upon this statement, and the written evidence and documents referred to in the case, by F. C. Loring, for the plaintiff, and by S. Hubbard, for the defendants.

The argument for the plaintiff was, in substance, as follows:

The facts in evidence prove, 1st. A seizure and detention. 2d. That such seizure, though under color of law, was without justifiable cause. 3d. That upon the release of the vessel, she was destroyed in value so that it was impracticable to repair her; that part of her cargo was destroyed; and that there were no means of forwarding the remainder. 4th. That an abandonment was made in due season. About these facts, there can be no dispute, unless it be about the second proposition. On this, the decree of the supreme court, reversing the decree of the inferior court and condemning the judge in costs, is conclusive; as it distinctly finds; 1st. That there was no real cause for the seizure; and 2d. That there was no probable cause; because the reason assigned for the seizure did not by law authorize it. There being no imputation of fraud, or irregularity in the proceedings of the court, and the proceedings being in rem, the facts found by the court are conclusive on all the world. Bradstreet v. Neptune Ins. Co. [Case No. 1,793]; Carrington v. Merchants' Ins. Co., 8 Pet. [33 U. S.] 495. These facts show a total loss; but the defendants say, that the vessel was released, and that her destruction is attributable immediately to the effects of climate, a peril not insured against, and only remotely to the seizure. The distinction between the proximate and remote cause of a loss, does not seem to be well settled, and the authorities do not agree. The rule, most agreeable to the true principles of the law of insurance,

seems to be, that where the damage is a direct and unavoidable consequence of the occurrence of a peril insured against, the insurers are liable, though the immediate agent was not such a peril. In the present case, the heat of the climate and worms operated upon and destroyed the vessel. The liability of the vessel to this destruction, however, was owing to an illegal seizure and detention, and that was the immediate cause of, though not the active agent, in the destruction. Barker v. Blakes, 9 East, 294; Hagedorn v. Whitmore, 1 Starkie, 157; Savage v. Pleasants, 5 Bin. 403; Shieffelin v. New York Ins. Co., 9 Johns. 21; Patrick v. Commercial Ins. Co., 11 Johns. 9.

2d. The facts show a total loss of the voyage, caused by an illegal seizure, and this constitutes a total loss of the vessel. If the voyage is retarded by the operation of a peril insured against, until the ship becomes incapable of prosecuting it, there is a total loss, for which insurers are liable. Peele v. Merchants' Ins. Co. [Case No. 10,905]; Goss v. Withers, 2 Burrows, 683; Miles v. Fletcher, 1 Doug. 231; Idle v. Royal Exchange Assur. Co., 3 Moore, 155; Marine Ins. Co. v. Tucker, 3 Cranch [7 U. S.] 357; Barker v. Blakes, 9 East, 294; Smith v. Universal Ins. Co., 6 Wheat. [19 U. S.] 176; Bradlee v. Maryland Ins. Co., 12 Pet. [37 U. S.] 400. See, also, Williams v. Smith, 2 Caines, 1. In this case, the voyage was retarded by a peril insured against. This retardation rendered the ship incapable of performing the voyage, because, when it ceased to operate, she was unseaworthy, and could neither be repaired where she was, nor carried elsewhere. The voyage was utterly destroyed, and it was impossible to accomplish the adventure, in consequence of the operation of a peril insured against. The master was bound, in duty to the owners, to claim and prosecute an appeal from the decree of the inferior court. Otherwise they could have sustained no claim for indemnity, as the facts, as stated in that decree, would have given them no legal claim, and it would not have been competent for the owners to disprove them. But if he had committed an error in judgment in so doing, that would not have exempted the insurers from liability for this loss, if caused by a peril insured against. If, as is well settled, insurers are liable for losses by perils insured against, when attributable remotely to the negligence or misconduct of the master or crew, a fortiori they would be liable where there was only an error in judgment.

The argument for the defendants was, in substance, as follows:

The plaintiff states his loss to be by arrest and detainment, and by the perils of the seas. It cannot, however, have arisen from both causes. That it did not grow out of the arrest and detainment, appears from the fact, that the vessel and cargo were released. Nor was it occasioned by a peril of the sea, because destruction by worms is not covered by the policy; and the injury to the sails and rigging arose either from neglect, or after the acquittal in May. Even if there has been a loss, for which the defendants are answerable, it has not been a total loss; because the captain might have received a very considerable salvage, if not a total indemnity, if he had not refused or neglected to obtain it. The defendants contend, that they are not liable for the loss, because, 1st. It was occasioned by a seizure and detention on account of illicit trade, or, 2d. By the barratry of the master. The sentence of the court of appeals does not seem to preclude the proof of collateral facts, not inconsistent with the facts therein stated, though they may go to affect the character and force of that sentence, and even render it nugatory. Such facts, for example, as go to prove, that the seizure was not malicious, nor without probable cause of suspicion; or such as prove, that the party was guilty of fraud and falsehood in relation to the facts supposed to be proved by such sentence. Again, the clause in the contract seems to allow the parties to go into the question of fact, as to whether there were articles contraband of war on board, or whether, or not, there was any attempt to carry on an illicit trade. Supposing, for a moment, that we cannot go behind the decree, and admitting also, that, by the decree itself, it appears, that there was no justifiable cause for the condemnation of the vessel; yet, that decree does not as clearly prove, that the original seizure was neither malicious, lawless, nor wantonly made under a false pretext. Bradstreet v. Neptune Ins. Co. [Case No. 1,793]. There was a well founded suspicion of illicit trade, and the detention and subsequent seizure, on that account, were the cause of the loss. This brings the case within the very exception in the policy. The conclusion is, that if there had been no illicit trade, there would have been no seizure, no detention, and no loss. The master having been guilty of fraud and falsehood in relation to the facts supposed to be established by the sentence, and the general acquittal being founded on his perseverance in his false statements, he is guilty of barratry. His barratry was, in fact, the actual cause of the seizure and consequent loss; and we are, therefore, absolved from all liability.

STORY, Circuit Justice. The first question, which arises in the present case, is, whether there has been a total loss in the sense of the law of insurance. It is clear, that there has been no loss by the perils of the seas. But there has been a restraint and detainment of the government within the words of the policy. Has there been a total loss by reason of that restraint and detainment? I think there has been. The argument is, that the injury to the vessel, by the long delay

and exposure to the climate, was the immediate cause of the loss, and the seizure and detainment the remote cause only; and that, therefore, the rule applies, "Causa proxima. non remota, spectatur," and the underwriters are not liable for injury by mere wear and tear, or by delays in the voyage, or by worms, or by exposure to the climate. But it appears to me, that this is not a correct exposition of the rule. All the consequences naturally flowing from the peril insured against, or incident thereto, are properly attributable to the peril itself. If there be a capture, and before the vessel is delivered from that peril, she is afterwards lost by fire. or accident or negligence of the captors, I take it to be clear. that the whole loss is properly attributable to the capture. It would be an over-refinement and metaphysical subtlety to hold otherwise; and would shake the confidence of the commercial world in the supposed indemnity held out by policies against the common perils. The decision of the supreme court of the United States in Peters v. Warren Ins. Co. (at the last term) 14 Pet. [39 U. S.] 99, is directly in point; and in my judgment fully settles, that the restraint and detainment under the seizure are to be treated as the proximate cause of the loss in the sense of the rule. The vessel was never delivered from that peril, until she was virtually destroyed and incapable to perform the voyage. But, if it were possible to get over this point, as I think it is not, the loss of the voyage arising from the total incapacity of the vessel to perform it would, under the circumstances, it being by a peril insured against, be decisive upon this point.

In the next place, as to the sentence of the court of appeals. The policy contains a clause, "that the assurers shall not be answerable for any charge, damage or loss, which may arise in consequence of seizure or detention for or on account of illicit, or prohibited trade, or trade in articles contraband of war." The true construction of this clause of the policy was finally settled by the supreme court of the United States, in the case of Carrington v. Merchants' Ins. Co., 8 Pet. [33 U. S.] 495. It was there held, that it was not necessary to bring the case within the clause, that there should be a justifiable cause of condemnation; but only, that there should be a justifiable cause of seizure, or in other words, a probable cause of seizure. If the seizure be tortious, and without such cause, it is treated as not bonâ fide done, as an act of lawless violence, or of arbitrary power, or of gross fraud, or at all events of unjustifiable force, according to circumstances.

The question then arises. whether the seizure in this case was justifiable, or founded upon probable cause. Now, the sentence of the appellate court expressly affirms. that there was no justifiable ground for the sei-

zure of the schooner; that the very act of illegality in landing the six bags of beans, asserted in the libel or proceeding in rem, supposing it to be true, furnished by law no ground for the seizure of the schooner, because the value was only $25, and no penalty could attach upon the vessel by law, unless the goods illegally landed from the vessel were of the value of fifty dollars. Now, this is an adjudication upon the very point in controversy, as to probable cause; and it negatives the existence of it.

Then, is this sentence conclusive, or are the parties at liberty to go behind it, and to prove aliunde the existence of a probable cause of the seizure. It appears to me, that. independently of fraud, (a point, which will be presently considered,) the sentence is conclusive. This is the established doctrine of the supreme court of the United States, which was fully examined and considered by this court in the recent case of Bradstreet v. Neptune Ins. Co. [Case No. 1,793], and. therefore, it need not be here further discussed. But, then, it is said, that here the sentence was founded in fraud. It is not pretended, that there was any fraud, or participation in any fraud, on the part of the court; and certainly, if contended for, there are in the case no proofs to support it. The only ground, asserted for the imputed fraud, is, that the master of the schooner swore falsely, in relation to the matters in controversy before the court, upon the trial of the seizure, and thereby procured the sentence of reversal of the appellate court; and that it is apparent from the other evidence now produced, that there was probable cause of the seizure. Now, in the first place, I do not know, that it any where appears, that the master was a witness, or what in fact he did swear to, if a witness, at the time of the hearing of the trial of the cause; for it is not stated in the transcript of the proceedings, nor does it appear, what effect, if any, the evidence given by him had, or could have upon the ultimate decree, pronounced by the court below, or by the appellate court. What the master said, if he was a witness, might have had no influence upon the decision, for aught that the record directly states or discloses. The most, that can be said. is, that the master concealed the fact, that eleven bags of beans had been illegally landed from the schooner instead of six; and that thereby both courts were misled in their decrees. But concealment of facts would be a new head of the law, upon which to avoid a sentence of condemnation or acquittal in case of a seizure and proceedings in rem. Nor do I know, (but I give no opinion on the point) that it has ever been judicially held, that a sentence of a foreign court, acting in rem, as in cases of revenue seizures and cases of prize, has ever been held to be reëxaminable. as to its validity, either in cases of condemnation or of ac-

quittal, upon the mere ground, that there had been false swearing in the case by the agents of some of the parties in interest. That would be a very broad ground, and open a wide door to impeach the validity and conclusiveness of such sentences. If such evidence be admissible at all, it is equally admissible to disprove and vacate a sentence of condemnation, as well as a sentence of acquittal. It seems to me, that if evidence of false swearing in such cases be admissible to disprove the sentence, and establish fraud in it (on which I give no opinion), it ought to be clearly shown, that it was the real, substantial, and efficient cause of the sentence, and not, that it might have formed an ingredient in it.

In the present case, it is far from being clear, that eleven bags of beans were illegally landed from the schooner. There is considerable confusion in the evidence on this point. But it is unnecessary to consider it, since it is plain, upon the very face of the proceedings, that the only asserted ground of forfeiture was the illegal landing of six bags of beans. No other matter was, or could be brought into controversy in the suit. The seizure was for that act, and for that alone. It is wholly immaterial, what other causes might have existed to justify a seizure. The only question is, what in fact was the positive cause of the seizure, not what might have been a good cause. From what has been already stated, the professed cause of the seizure was an act, which, by law, could not induce any forfeiture, and consequently could furnish no justifiable or probable cause for the seizure. By our law,—Act 1799, c. 128, § 50 [1 Story's Laws, 617; 1 Stat. 665, c. 22],—the landing of goods of the value of four hundred dollars from a vessel without a permit will subject the vessel to forfeiture. But, if a vessel were seized for landing goods of the acknowledged value of not more than fifty dollars, it would be impossible for the court to hold, that there was any justifiable or probable cause for the seizure of the vessel. In truth, therefore, whether there was any false swearing or not, or any fraudulent concealment, or not, by the master, it is clear, that the appellate court proceeded in its sentence upon the fact, that the illegal landing of six bags of beans was the sole cause of the seizure; and that, consequently, it was without any justifiable or probable cause in law or in fact.

This view of the matter disposes of the whole merits of the defence; and it is unnecessary to discuss the other points, incidentally suggested at the argument. Upon the whole, my opinion is, that the loss is clearly a total loss within the policy; and that the case does not fall within the clause exempting the underwriters from losses and charges and damages occasioned by seizure or detention, on account of illicit or prohibited trade.