HENRY D. BRANDYCE and Another, Copartners, Doing Business as H. D. BRANDYCE & COMPANY, Plaintiffs, v. UNITED STATES LLOYDS, INC., Defendant.

Second Department, January 11, 1924.

Insurance — marine insurance — action to recover on policy covering potatoes — ship collided with unknown object and put into port for repairs — potatoes were not damaged by collision — during delay potatoes began to deteriorate through rot and sprouting and were sold — proximate cause of loss was sea peril — insurer is liable.

The proximate cause of a loss of potatoes covered by a policy of marine insurance is the perils of the sea, where it appears that the ship on which they were being transported collided with some unknown object causing damage which necessitated taking her into a port for repairs, where it was found necessary to discharge the cargo; that it became necessary after two surveys and because of sprouting and rot to sell the potatoes; that the potatoes were not injured directly by the collision or sea water and the only loss suffered or which would have been suffered was natural deterioration; that the potatoes could not be reshipped and would inevitably have perished unless sold; and that if the ship had not been damaged by reason of the collision the potatoes would have arrived sound at the port of destination.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 546 of the Civil Practice Act.

*Wharton Poor*, for the plaintiffs.

*D. Roger Englar* [*Oscar R. Houston* with him on the brief], for the defendant.

RICH, J.:

The defendant is the successor to the liabilities of the Washington Marine Insurance Company, which issued to plaintiffs, on February 20, 1920, five marine certificates of insurance, under its open policy No. 1120, for $12,000, covering 1,000 barrels of potatoes, per steamship *Corsicana*, from New York to Caibarien, Cuba. The defendant agreed to insure against " perils of the seas, fires, pirates, rovers, assailing thieves, jettisons, criminal barratry of the master and mariners, and all other like perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said merchandise or any part thereof."

· The *Corsicana* sailed from New York on February 23, 1920, and on the following day collided with some unknown object and in consequence of the collision she became damaged and was obliged to put into Charleston, S. C., for repairs, where it was found necessary to discharge the cargo, including plaintiffs' potatoes.

It also became necessary, after surveys on March sixth and twenty-second, and because of sprouting and rot, to sell .the potatoes, upon which the sum of $7,417.34 was realized. The potatoes were not injured directly in the collision, or touched by sea water, and the only loss suffered, or which would have been suffered, was natural deterioration. The precise question presented by this submission relates to whether loss by natural deterioration, during a delay in the voyage caused by a sea peril, is a loss by sea perils within the meaning and intent of the policy of insurance.

Plaintiffs contend that where the *predominant* cause of the loss is a sea peril, the underwriters are liable, although a contributing cause may have been deterioration and delay. They cite *Williams* v. *Smith* (2 Caines, 1); *Tudor* v. *New England Mutual Marine Ins. Co.* (12 Cush. [Mass.] 554) and *Musgrave* v. *Mannheim Ins. Co.* (32 N. S. 405 [1899]). They urge that the cause which is truly proximate, is not proximate in *time* but proximate in *efficiency*. (*Leyland Shipping Co.* v. *Norwich Union Fire Ins. Society,* L. R. [1918] App. Cas. 350; *The G. R. Booth,* 171 U. S. 450, 459, 460.) Defendant asserts, however, that in order to render it liable, it must be shown that the loss is proximately due to one of the known perils, of which *retardation* or *delay* of the voyage is not one, and in support of its contention cites *Taylor* v. *Dunbar* (L. R. 4 C. P. 206); *Pink* v. *Fleming* (L. R. 25 Q. B. Div. 396); *The Alps* (L. R. [1893] P. D. 109, 116); *Reischer* v. *Borwick* (L. R. [1894] 2 Q. B. Div. 548); *Inman Steamship Co.* v. *Bischoff* (L. R. 7 App. Cas. 670, 676); *Perry* v. *Cobb* (88 Maine, 435, 438); *Firemen's Fund Ins. Co.* v. *Trojan Powder Co.* (253 Fed. Rep. 305, 311); *Cory.* v. *Boylston Ins. Co.* (107 Mass. 140, 144) and *Moses* v. *Sun Mutual Ins. Co.* (1 Duer, 159).

The question presented has not been considered in any of the courts of this State since 1804. (*Williams* v. *Smith, supra.*) In that case, in which Hamilton and Riggs appeared as counsel, Judge KENT, writing for the court, held that if a vessel be driven into·a port of necessity, and a pestilential disorder break out, which renders it impossible for her to pursue her voyage, it is a loss within the perils of the policy. The court said: " I am satisfied that the damage resulting from the pestilence at Cadiz is covered by the policy. It is not requisite to decide absolutely, whether a pestilence is a peril direct within the policy. It formed, however, a sound excuse for delay at Cadiz, and if the consequence of that delay was a deterioration of the subject insured, the insurer must be answerable for the loss." There is an apparent conflict in England in the reasoning as to proximate cause between actions for loss of *freight* and actions for loss of *cargo.* (*Jackson* v. *Union Marine.*

*Ins. Co.,* L. R. 10 C. P. 125; *Matter of Jamieson & Newcastle Steamship Freight Ins. Assn.,* L. R. [1895] 2 Q. B. Div. 90.) Thus in *Musgrave* v. *Mannheim Ins. Co.* (32 N. S. 405 [1899]), the *Tyrian* was struck with a heavy gale, which caused her machinery to break down, and after drifting about for some days, she was picked up and towed to Bermuda, where it was found that the making of repairs necessitated the discharge of some of the cargo, which consisted of 7,000 barrels of potatoes and 285 drums of dried fish. While the cargo had received no damage from contact with sea water, it did show evidences of decay, and the owners of the cargo refused to permit it to remain until repairs were made and it was redelivered to them. The claim of the defendant was that the *proximate* cause of the loss of the freight was delay, and the perishable nature of the cargo, but the sea peril was held the proximate cause of the loss of the freight

Mere delay on the voyage, as a result of which *cargo* is spoiled or damaged, is not a ground for recovery. This is exemplified by the leading case of *Taylor* v. *Dunbar* (*supra*), cited by the defendant, in which the delay was caused by tempestuous weather and in which MONTAGUE SMITH, J., said: " The loss here has arisen in consequence of the putrefaction of the meat from the voyage having been unusually protracted. *That is a loss which does not fall within any of the perils enumerated in this policy.* To render the underwriters liable, it must be shown that the loss is proximately due to one of the known perils. *Retardation or delay of the voyage is not one of them.*" *The Alps* (L. R. [1893] P. D. 109, 116), also cited by the defendant, belongs to this class of cases. In *Pink* v. *Fleming* (L. R. 25 Q. B. Div. 396), however, the question presented appears to have been squarely passed upon. As a result of a collision a portion of a *cargo* of oranges and lemons was temporarily discharged into lighters, and later reloaded and the voyage continued. Upon arrival at destination it was discovered that some of the fruit was decayed, due partly to delay and partly to handling. It was held that the *delay* and not the *collision* was the proximate cause of the loss, the court saying: " According to the *English* law of marine insurance only the *last* cause can be regarded. * * * With regard to the American authorities, the American law on the subject seems *to differ materially from our law,* and therefore, it is not necessary to consider them." The ground of this decision that only the *last* cause can be regarded is patently in conflict with a later pronouncement of the House of Lords in the *Leyland Case* (*supra*), cited by the plaintiffs, in which a ship having been torpedoed, proceeded to Havre, where she was anchored at a quay. Because of a storm the following day, she was anchored in the

harbor, but at the fall of the tide she grounded, and because of the strain on her hull, sank. The question presented for decision was whether the loss was due to sea, or war perils, which were excepted by the policy, and in holding that the proximate cause of the loss was the torpedo attack, Lord SHAW said: "To treat *proxima causa* as the cause which is nearest in *time* is out of the question. * * * The cause which is truly proximate is that which is proximate in *efficiency*. That efficiency may have been preserved although other causes may meantime have sprung up which have yet not destroyed it, or truly impaired it, and it may culminate in a result of which it still remains the real efficient cause to which the event can be ascribed." In the *Musgrave Case* (*supra*) WEATHERBE, J., observed: "Assuming that there is direct conflict in the reasoning as to proximate cause, which I do not deny, between actions for loss of *freight* and actions for loss of *cargo*, if apart from the governing authority of the Privy Council on this point, I am asked to select that side where the practical common sense commercial interest is to prevail in a struggle to reconcile conflicting views, I should stand by those cases represented by *Jackson* v. *Union Marine Ins. Co.* as to the *causa proxima*. It cannot be denied that *Cossman* v. *West*\* has gone beyond all former record on that subject, and could never have been decided as it was, if the law, as laid down afterwards by Lords ESHER and LINDLEY had been applied. It may be mentioned that neither *Jackson* v. *Union Marine Ins. Co.*, nor *Cossman* v. *West*, in which case also Lord BRAMWELL was of the court, were cited in *Pink* v. *Fleming*." (32 N. S. 416, 417.)

The decisions in *Tudor* v. *New England Mutual Marine Ins. Co.* (12 Cush. [Mass.] 554) and *Cory* v. *Boylston Ins. Co.* (107 Mass. 140, 144) are claimed to be in apparent conflict, but I am of the opinion that they are entirely consistent. In the latter case the vessel encountered heavy storms, resulting in delay. Part of the cargo of champagne was damaged by sea water, while some was spoiled by discoloration and mold. It was held, following *Baker* v. *Manufacturers' Ins. Co.* (12 Gray, 603), that while the insurers were liable for the damage occasioned by sea water, they were not liable for any damage from the ordinary dampness of the hold, although aggravated by the length and circumstances of the voyage. The learned court cited, and clearly placed this case within the class of cases exemplified by *Taylor* v. *Dunbar* (*supra*). *Perry* v. *Cobb* (88 Maine, 435, 446) is a similar case, citing *Taylor* v. *Dunbar* and *Cory* v. *Boylston Ins. Co.*, and illustrating the rule

---

\* L. R. 13 App. Cas. 160.— [REP.

that if the inherent vice of the article shipped is stimulated by a protracted voyage, it is still no loss from a peril of the sea.

To that doctrine we can subscribe, but does the case at bar fall within that class of cases? They all, with the exception of *Pink* v. *Fleming*, contain the element of *delay* in the voyage, caused by bad weather and rough seas, as a result of which cargo, because of an inherent vice, is spoiled or destroyed. Thus in *Taylor* v. *Dunbar* it was meat which became putrid because of delay occasioned by storms, champagne was damaged by discoloration and mold in *Cory* v. *Boylston Ins. Co.*, and deterioration of lime was the claim in *Perry* v. *Cobb*.

In *Tudor* v. *New England Mutual Marine Ins. Co.* (*supra*) the subject of insurance was a *cargo* of ice. The voyage was from Boston to Calcutta. The vessel sprang a leak, and it became necessary to put in at Bahia, Brazil, where the cargo was discharged and it was discovered that a small portion had been melted by sea water. The cargo was sold at Bahai because it would have become a total loss if sent forward to its destination. In holding the underwriters liable the court said: " The rule of law is now well settled that, under an insurance upon an article free from average, if by reason of the perils insured against, it is placed in such a condition, that in consequence of inevitable *deterioration* or decay, it cannot be carried to the port of destination, but will necessarily, before the completion of the voyage, be wholly destroyed, and it is accordingly sold, at an intermediate port, this will constitute a total loss within the true intent and meaning of the memorandum clause." *Williams* v. *Smith* (*supra*) is another illustration of the doctrine enunciated by this case, which lays down a rule entirely different from that in the class of cases exemplified by *Taylor* v. *Dunbar* (*supra*).

In the present case, seven days after arrival of the potatoes at the port of refuge, it was reported by the surveyor that if delivered to destination within thirty to forty days, they would arrive ninety per cent sound, but on March 22, 1920, he found they were deteriorating by sprouting and rot and advised their sale. This evidence leaves no room for doubt that the potatoes could not be reshipped and must inevitably have perished there unless sold. Was the cargo injured by reason of perils insured against, and placed in such a condition that in consequence of inevitable deterioration or decay it could not be carried to the port of destination? I think it was. The evidence indicates that if the *Corsicana* had not been damaged by reason of sea perils, the potatoes would have arrived sound. The proximate cause of the loss, therefore, was the sea peril, because it was the *efficient* domi-

nant cause which, although incidentally involving *delay*, placed the cargo in such a condition that, because of inevitable deterioration or decay, it could not be reshipped and carried to its destination.

Judgment should, therefore, be directed in favor of the plaintiffs in the sum of $4,582.66, with interest from October 27, 1920, without costs.

KELLY, P. J., KELBY, YOUNG and KAPPER, JJ., concur.

Judgment directed in favor of the plaintiffs in the sum of $4,582.66, with interest from October 27, 1920, without costs.