## GOLDMAN v. RHODE ISLAND INS. CO.

### No. 335 of 1947.

United States District Court
E. D. Pennsylvania.
Sept. 28, 1951.

Abraham E. Freedman, of Freedman, Landy & Lorry, of Philadelphia, Pa., for libellant.

Enrico S. Sanfilippo, of New York City, Thomas C. Egan and Francis Logan, of Philadelphia, Pa., for respondent.

BARD, District Judge.

This is an action in admiralty by a retail shoe store operator against an insurance company for damages to a shipment of shoes from Argentina, which damages were allegedly caused by a risk covered by insurance. On the basis of the pleadings and the testimony, I make the following special

## Findings of Fact.

1. Libellant is Myer Goldman, the operator of a retail shoe store in Wilmington, Delaware. Libellant has been engaged in this business for over thirty years.

2. In March or April 1946 libellant ordered 636 pairs of women's calfskin and suede shoes from Cormons Company of Buenos Aires, Argentina.

3. These shoes were not manufactured by Cormons, but the manufacturing process and the method of packing the shoes for overseas shipments were continually inspected and revised by Cormons.

4. The shoes were packed by the manufacturer in glassene bags which were enclosed in ordinary white cardboard boxes and thereafter placed in five cases of ⅛" plywood, reinforced with wooden cleats, bound with steel bands and lined with waterproof paper.

5. Cormons shipped these five cases of shoes under deck from Buenos Aires to New York, New York on board the S. S. Bessemer Victory under a bill of lading dated August 8, 1946.

6. The shoes arrived in New York City on or about September 15, 1946 and were thereafter transhipped to libellant, arriving at his place of business in Wilmington on December 16, 1946.

7. When delivered to libellant the shoes were covered with a thick, heavy green mold of measurable thickness, and were so damaged as to make them nonsaleable.

8. Respondent is Rhode Island Insurance Company, a Rhode Island corporation engaged in the marine insurance business within the jurisdiction of this Court.

9. Respondent had issued an open policy of insurance numbered OC 2063 and CWR 1364 to Globe Shipping Company, Inc. On August 8, 1946, pursuant to this open policy, Globe issued to libellant certificate number OCC 2197 insuring the above five cases of women's shoes for $3,900 from the time the shoes left the warehouse in Buenos Aires until delivered to libellant.

10. Paragraph 14 of the open insurance policy provides: "Warranted by the assured free from damage or injury from dampness, change of flavor, or decay, or from being spotted, discolored, musty or mouldy, unless caused by actual contact of sea water with the articles damaged, occasioned by sea perils; also warranted free of claim for loss of market or for loss, damage or deterioration arising from delay, whether such delay be caused by a peril insured against or otherwise, unless the risk of delay is expressly assumed in writing hereon."

11. The risk of delay was not expressly assumed in writing on the open policy or on the certificate issued to libellant.

12. Paragraph 6 of the Marine Extension Clauses, which were attached to the open insurance policy, provides: "6. This insurance shall in no case be deemed to extend to cover loss damage or expense proximately caused by delay or inherent vice or nature of the subject-matter insured."

13. The Special Conditions of the certificate issued by Globe provide:

"Shipments under Deck Are Insured:—

"Against all risks of loss or damage from external causes, irrespective of percentage excluding such risks as are excluded by the F. C. & S. and the strike clauses on this policy.

"Including Marine Extension Clauses."

14. The shoes were properly manufactured and in good condition when shipped from Buenos Aires.

15. The proper curing and tanning of the leather in the shoes and the moisture content of that leather when the insurance attached was not determined.

16. Neither the packing cases nor the shoes suffered any external damage or came in contact with any sea water.

17. The delay between September 15, 1946, when the shoes arrived in New York City, and December 16, 1946, when they were delivered to libellant in Wilmington, has not been explained. The whereabouts of the shoes during this period was not given.

18. There is no evidence that the shoes were exposed to freezing temperatures at any time from shipment in Buenos Aires to delivery in Wilmington.

19. The shoes were exposed only to the ordinary sea air, temperature changes and atmospheric conditions that are reasonably expectable for an under deck shipment from Buenos Aires to New York City and for further transhipment to Wilmington at that time of the year.

20. Libellant has not proved the cause of the green mould that damaged the shoes.

21. Libellant has not proved that this cause was a risk covered by the insurance policy.

### Discussion.

 A marine insurer is not liable for loss due to the inherent vice of the subject-matter unless such liability is expressly assumed in the policy. Lanasa Fruit Steamship & Importing Co., Inc., v. Universal Ins. Co., D.C., 16 F.Supp. 912, 913, reversed on other grounds 302 U.S. 556, 58 S.Ct. 371, 82 L.Ed. 422; 2 Arnould, Marine Insurance and Average, § 778 (13th ed. 1950). In the policy in suit loss or damage from inherent vice and delay are expressly excluded from the risk.

It is also established in marine insurance law that the insured bears the burden of proving that his loss was caused by an insured peril. Western Assur. Company of Toronto, Canada v. Shaw, 3 Cir., 11 F.2d 495, 496, certiorari denied 273 U. S. 698, 47 S.Ct. 93, 71 L.Ed. 846; Fireman's Fund Ins. Co. v. Globe Nav. Co., 9 Cir., 236 F. 618, 627; Soelberg v. Western Assur. Co. of Toronto, Canada, 9 Cir., 119 F. 23, 31–32; Baker Castor Oil Co. v. Insurance Co. of North America, D.C., 60 F.Supp. 32, 34; 2 Arnould, Marine Insurance and Average, § 1283, p. 1190 (13th ed. 1950). This he has not done.

Libellant proceeded upon the theory that the mold on the shoes was caused by an external cause covered by the insurance policy—prolonged exposure to freezing temperatures.

Libellant did not introduce any evidence to show the temperatures to which the shoes were exposed at any time, and it follows that there was no evidence of any exposure to freezing temperatures.

The shoes were shipped from Argentina in winter, passed through the tropical zone, arrived in New York in late summer, and were somewhere in transit in the United State until late fall or early winter. Unless they were stored specially throughout this period, of which there is no evidence, they would naturally be exposed to some changes in temperature and humidity.

Libellant also claims that the tensile strength of the cement or glue that holds the soles of the shoes to the uppers was destroyed or decayed by protracted exposure to freezing temperatures. I accept the surveyor's original report that there was only mold damage at the time of delivery to libellant.

### Conclusions of Law.

1. This Court has jurisdiction of this case.

2. Libellant has failed to prove that the damage to the shoes was caused by an insured risk.

3. Judgment is hereby entered for respondent.