NAUTILUS VIRGIN CHARTERS, INC.;
Hilliard L. Lubin and Aileen G.
Lubin, Plaintiffs,

v.

EDINBURGH INSURANCE COMPANY,
LTD., Defendant.

Civil No. H-79-1048.

United States District Court,
D. Maryland.

April 7, 1981.

Francis J. Gorman and Semmes, Bowen & Semmes, Baltimore, Md., for plaintiffs.

Manfred W. Leckszas, Geoffrey S. Tobias, Linda K. Boyd and Ober, Grimes & Shriver, Baltimore, Md., for defendant.

ALEXANDER HARVEY, II, District Judge:

This is a civil action in which the plaintiffs seek to recover damages from their insurer for the loss of a pleasure yacht. Both sides have moved for summary judgment as to the first Count of the amended complaint, and defendant has moved to dismiss the second Count. An extensive record has been developed by the parties, and the Court concludes that this case is well suited for disposition by way of the pending motions. The issues have been exhaustively briefed, and oral argument has been heard in open court.

The following facts are not disputed. On November 15, 1978, two of the plaintiffs in this case, Hilliard L. Lubin and his wife, Aileen G. Lubin (hereinafter "the Lubins"), purchased a forty-five foot auxiliary ketch, the TEHO, from Nautilus Yacht Sales in Annapolis, Maryland. Two days later, the Lubins entered into a Charter Brokerage Agreement with Nautilus Virgin Charters, Inc., the third plaintiff in this case (hereinafter "Nautilus"). Under the terms of this Agreement, the TEHO was delivered on December 1, 1978 to Nautilus' facility on St. Thomas, U.S. Virgin Islands, for use as a charter vessel. Around this time, the defendant, Edinburgh Insurance Company, Ltd. (hereinafter "Edinburgh"), added the TEHO to a Yacht Insurance Policy it had previously issued to Nautilus and to individual owners of yachts managed by Nautilus. The Lubins were added as additional insureds.

On November 22, 1978, Nautilus and the Lubins entered into a Yacht Charter Agreement with Harold P. McKay, Sr. (hereinafter "McKay, Sr.") for the charter of the TEHO for the month of January 1979. In the Charter Agreement, the charterer had agreed to limit his cruising to the Virgin Islands, but following the payment of an additional premium to Edinburgh, the navigation limits were extended "to cover as far south as the waters of Antigua, West Indies." Having paid in full for the charter,[1] McKay, Sr. boarded the TEHO on January

---

1. The Lubins received their share of the charter fee, some $1900, in mid-January, 1979.

3, 1979, together with his wife, his son (hereinafter "McKay, Jr."), his daughter-in-law and his grandson. The McKays left St. Thomas that same day but instead of heading for Antigua, the TEHO proceeded toward Puerto Rico.

Nautilus had no further contact with McKay, Sr. until February 2, 1979, when he called the Annapolis office of Nautilus to inquire if his son had been heard from. He explained that he had injured his foot in early January, and that he, his wife and their grandson had disembarked in Puerto Rico on or about January 7, 1979 and returned to Florida. He stated that his son and daughter-in-law had remained with the vessel and intended to sail to Antigua to visit friends.

Nautilus immediately filed an overdue vessel report, which was upgraded two days later to a missing vessel report. On February 8, 1979, the United States Coast Guard informed Nautilus that the TEHO was being held in South America by the government of Colombia, with her crew under arrest. The Department of State informed Nautilus that the vessel had been seized on January 17, 1979 by the Colombian Navy while it was forty miles off the coast of that country. On board the vessel were 150 bales of pressed marijuana. All persons on board were arrested, including McKay, Jr., his wife and two individuals named Paccioca and Pita, who had boarded the vessel after McKay, Sr. had left it.

After plaintiffs' efforts to recover the vessel from the Colombian authorities failed, plaintiffs filed a claim with defendant insurance company, seeking to recover under the policy which had been issued. When defendant refused to pay the claim, this civil action was brought in this Court. Both admiralty and diversity jurisdiction have been asserted.

The original complaint contained only one Count and sought recovery under the insurance policy because of alleged barratrous and other acts and deviations committed by the McKays. Following extensive discovery and after initial briefs had been filed by the parties in support of and in opposition to plaintiffs' motion for summary judgment, plaintiffs, with leave of Court, filed an amended complaint which added a second Count. In the second Count, plaintiffs allege that defendant breached an extra-contractual duty owed to plaintiffs by not making a reasonably diligent effort to ascertain the facts surrounding the seizure of the TEHO, by not assisting the plaintiffs in recovering the yacht and by not keeping plaintiffs reasonably well informed of its intentions in connection with plaintiffs' claim. In moving to dismiss the second Count, defendant contends that it owed no duty to plaintiffs once it had decided to deny coverage under the policy.

I

Insofar as Count I is concerned, the essential question presented is whether the Yacht Insurance Policy issued by the defendant covers the loss of plaintiffs' yacht under the circumstances described. In their motion for summary judgment, plaintiffs assert that the undisputed facts establish that the loss is covered. In its motion for summary judgment, defendant contends that there is no coverage because of various provisions and exclusions contained in the insurance policy.

Two defenses of substance are presented to the claims asserted under this insurance policy. Defendant has contended (1) that the proximate cause of the loss was the seizure of the yacht by the Colombian government and that, since loss by seizure is specifically excluded by the insurance policy, plaintiff is not entitled to recover here; and (2) that plaintiffs are not entitled to recover because the loss occurred outside the geographic limits of the policy.[2] For the reasons set forth herein, this Court concludes that defendant is entitled to summary judgment because the proximate cause of the loss was the seizure of the yacht by the government of Colombia.

2. Other defenses asserted by Edinburgh are without merit.

Several preliminary points may be disposed of summarily. Defendant has argued that plaintiffs have failed to establish a loss. There is no merit to this contention. It is undisputed that the TEHO was seized by Colombian authorities on January 17, 1979 and that the yacht has not been returned to the possession of the plaintiffs. Certainly, more than a reasonable period of time has elapsed. Whether this be deemed a constructive loss or a total loss, recovery of the TEHO at this late date is certainly unlikely. *See* W. Winter, *Marine Insurance*, at 392 (3d Ed. 1952); J. Goodacre, *Marine Insurance Claims*, at 575 (1st Ed. 1974). The record here establishes that plaintiffs have sustained a loss and would be entitled to recover if that loss were covered by the insurance policy.

Defendant has also argued that the facts of this case do not show that barratry occurred. In *The Republic of China v. National Union Fire Insurance Co. of Pittsburgh*, 151 F.Supp. 211 (D.Md.1957), *aff'd in part and rev'd in part*, 254 F.2d 177 (4th Cir. 1958), *cert. denied*, 358 U.S. 823, 79 S.Ct. 38, 3 L.Ed.2d 64 (1958), Chief Judge Thomsen of this Court had occasion to determine whether a loss under certain policies of marine insurance was caused by barratry. Judge Thomsen adopted the classic definition of barratry given by Lord Ellenborough in *Earle v. Rowcroft*, 8 E. 126, 138 (1806), as follows:

> " * * * a fraudulent breach of duty by the master, in respect to his owners; or, in other words, a breach of duty in respect to his owners, with a criminal intent, or *ex maleficio*, is barratry. And with respect to the owner of the ship or goods, whose interest is to be protected by the policy, it can make no difference in the reason of the thing, whether the prejudice he suffers be owing to an act of the master, induced by motives of advantage to himself, malice to the owner, or a disregard to those laws which it was the master's duty to obey, and which (or it would not be barratry) his owners relied upon his observing."

Judge Thomsen went on to say the following:

The English Marine Insurance Act, 1906, Sch. I, Rule 11, provides: "The term 'barratry' includes every wrongful act wilfully committed by the master or crew to the prejudice of the owner, or, as the case may be, the charterer." This definition is accepted in America as well as in England. *Arnould*, sec. 839; 1 *Phillips on Insurance* (5th Ed., N.Y. 1867), sec. 1062; *Patapsco Ins. Co. v. Coulter*, 3 Pet. 222, 28 U.S. 222, 7 L.Ed. 659; *Greene v. Pacific Mutual Ins. Co.*, 9 Allen 217, 91 Mass. 217. Wilful nonfeasance of the master, doing nothing, if productive of mischief to the owner, may be barratry. *Patapsco Ins. Co. v. Coulter, supra*. If the captain deviates, or is compelled by the crew to deviate the vessel from its proper course and to put into an unauthorized port in fraud of his or their duty to owners, it is barratry. * * *

In affirming the major portion of Judge Thomsen's opinion, the Fourth Circuit specifically approved this definition of barratry. *National Union Fire Insurance Co. of Pittsburgh v. The Republic of China*, 254 F.2d 177, 182 (4th Cir. 1958). In his opinion, Judge Soper characterized the above excerpt from Judge Thomsen's opinion as setting out "the generally accepted definition of the offense of barratry * * *."

The facts here clearly establish that barratry occurred under this definition. Whether or not McKay, Sr. knew of and participated in the illegal drug smuggling acts of McKay, Jr., the father, who at the outset of the voyage was the master of the vessel, turned the TEHO over to his son in Puerto Rico. A wrongful act was clearly committed by the son, who was a member of the crew when the TEHO left the Virgin Islands and who was left in complete control of the yacht when McKay, Sr. left in Puerto Rico. When McKay, Jr. took the TEHO past the waters of Antigua, there was a deviation of the vessel beyond its proper course to the prejudice of the owners of the vessel. Smuggling by the master or crew of a vessel has been recognized by various authorities as amounting to barra-

try. *The Republic of China v. National Union Fire Insurance Co. of Pittsburgh, supra; Cory v. Burr,* 8 App.Cas. 393 (1883); *Vallejo v. Wheeler,* 1 Cowp. 143 (1774); *Havelock v. Hancill,* 3 T.R. 277 (1789). On the record here, this Court finds and concludes that the acts of McKay, Jr. clearly amounted to barratry under the definition approved by the Fourth Circuit in the *Republic of China* case.

Defendant argues that McKay, Sr. was the owner *pro hac vice* of the vessel and that there can be no barratry since he participated in the wrongful acts. A similar argument was rejected by Judge Thomsen in the *Republic of China* case. 151 F.Supp. at 228. The real owners here were the Lubins, and there is no substance to any contention that they were parties to the barratrous acts.

█ The next question presented is whether this policy covers a loss occasioned by barratry. The Yacht Insurance Policy issued by Edinburgh "covers subject to the exclusions and limitation of this policy, against ALL RISKS of physical loss or damage to the property covered from any external cause * * *." An all-risks clause includes loss for traditional perils of the sea, including barratry of the master or the crew. Gilmore & Black, *The Law of Admiralty* at 71 (2d Ed. 1975). Thus, if this loss was caused by barratry, plaintiffs are entitled to prevail.

The principal defense of defendant is that this loss was caused by seizure, which is not covered by the policy. Specifically excluded under the "EXCLUSIONS" provisions of the policy is "Any claim for loss, damage or expense caused by or resulting from capture, seizure, arrest, restraint or detainment, or the consequences thereof or any attempt thereat, or any taking of vessel by requisition or otherwise, whether in the time of peace or war and whether lawful or otherwise; * * *." The facts here clearly indicate that there was a seizure of the TEHO by authorities of the government of Colombia. Thus, the critical issue presented is whether the proximate cause of the loss was the barratry that occurred or

whether the proximate cause of the loss was the seizure. If the latter, there is no coverage and defendant is entitled to prevail. If the former, plaintiffs would be entitled to judgment, provided, of course, that no other provision of the insurance policy would defeat such recovery.

The Supreme Court has defined "proximate cause" in the insurance field as being "that cause which is most nearly and essentially connected with the loss as its efficient cause." *Standard Oil Co. v. United States,* 340 U.S. 54, 58, 71 S.Ct. 135, 137, 95 L.Ed.2d 68 (1950). The parties have cited numerous texts and decisions from many different jurisdictions applying principles of proximate causation to particular factual circumstances. Whatever approach may have been taken by courts elsewhere, this Court concludes that in this District and Circuit the controlling law to be applied in a case of this sort was set forth in *The Republic of China v. National Union Fire Insurance Co. of Pittsburgh* decision of Judge Thomsen, as affirmed in large part by the Fourth Circuit. Indeed, as in this case, the principal issue in *Republic of China* was the question of proximate causation.

In *Republic of China,* suits had been brought on various marine policies to recover for the loss of seven vessels which had been sold by the United States to the Nationalist government of China, subject to certain mortgages. The ships were being operated by the Nationalist government through a government-owned corporation when most of the masters, officers and crews of the seven vessels defected in January 1950 to the Chinese Communist regime. The masters and crews ran up the Red flag on their respective ships and held the vessels for the Communist government. They had previously disobeyed orders of the owner of the ships by entering or remaining in a British port and by refusing to sail to Taiwan or Japan. As stated by Judge Thomsen: "The principal question in each case is whether the loss was caused by 'barratry', or by 'seizure', or by both, as those terms are used and understood in the marine insurance field." 151 F.Supp. at 215.

In discussing the issue of proximate causation, Judge Thomsen said the following (151 F.Supp. at 230–231):

The general rule of proximate cause is stated in the opinion of Chief Justice Hughes in *Lanasa Fruit Steamship & Importing Co. v. Universal Insurance Co.*, 302 U.S. 556, 58 S.Ct. 371, 82 L.Ed. 422, in which he approves the discussion of the subject by Lord Shaw in *Leyland Shipping Co. v. Norwich Union Fire Ins. Soc.*, (1918) A.C. 350, 368–371. "Causation is not a chain but a net." We must seek "the real efficient cause" of the loss. 302 U.S. at pages 562, 563, 58 S.Ct. at page 374.

Libelants contend that a special rule of proximate cause is applied in barratry cases; that if barratry is a cause of the loss, recovery may be had under a policy insuring against barratry, even though the immediate cause of loss may not have been covered by the policy. Whether or not such a special rule exists for barratry cases has been hotly debated in England. *See* discussion by the various law lords in *Cory v. Burr*, 8 App.Cas. 393, and by *Arnould*, sec. 858, n.32. It would prolong this opinion unduly to review that controversy here. I conclude that where barratry is one of the causes of the loss, if the ultimate cause (such as stranding or capture) is not excluded from coverage by a warranty or an exclusion clause, recovery may be had on the grounds of barratry, whether or not the ultimate cause of loss was or was not a peril insured against. *See e. g., Arcangelo v. Thompson*, 2 Camp. 620. But where the ultimate cause of the loss is excluded from coverage by a warranty or an exclusion clause, recovery may not be had on the grounds of barratry. *See Cory v. Burr, supra; Swan v. Union Insurance Co.*, 3 Wheat. 168, 16 U.S. 168, 4 L.Ed. 361.

Like the insurance policy in this case, each of the policies in the *Republic of China* case specifically excluded a loss by seizure. As Judge Thomsen said at 151 F.Supp. 211:

"Therefore, if there was a seizure, and if it was the ultimate cause of the loss, there can be no recovery."

There were seven vessels involved in the *Republic of China* case. After reviewing the facts, Judge Thomsen concluded that insofar as six of them were concerned, the losses had been caused by acts of barratry and were therefore covered by the insurance policy. Relying on the opinion of Chief Justice Bigelow in *Greene v. Pacific Mutual Life Ins. Co.*, 9 Allen 217, 91 Mass. 217 (1864), Judge Thomsen found that there had been no seizure of these six vessels as that term has been interpreted by English and American law. Insofar as the seventh vessel was concerned, Judge Thomsen concluded that there had been a seizure, and that therefore the loss of the seventh vessel was not covered by the insurance policies.

On appeal, the Fourth Circuit, in an opinion by Judge Soper, affirmed Judge Thomsen insofar as his findings and conclusions on the six vessels were concerned, but reversed his finding and conclusion as to the seventh vessel. Judge Soper also relied on the *Greene* case in concluding that the term "seizure" does not include a violent taking of possession of a ship by its mutinous crew. 254 F.2d at 185. However, the Fourth Circuit found that like the other six ships, the seventh had also involved a breach of trust, which amounted to a barratrous taking rather than a seizure.[3]

This Court concludes that both Judge Thomsen and Judge Soper approved the rule of proximate causation as set forth in the House of Lords' decision in *Cory v. Burr*, 8 App.Cas. 393 (1883). The facts of the *Cory* case are quite similar to the facts of this case. There, the master of a vessel used it to smuggle tobacco into Spain without the knowledge or consent of the vessel's owner. Thereafter, Spanish customs officials seized the ship. The owner sought to recover under his insurance policy which, like the one in this case, covered a loss caused by barratry but not one caused by seizure of the vessel. In affirming an ap-

---

**3.** Judge Soper agreed that the principal question in the case was whether the loss was caused by barratry, by seizure or by both. 254 F.2d at 178.

peal from a judgment of the Court of Appeal which had affirmed a judgment of the Queen's Bench Division in favor of the insurer, the House of Lords concluded that a clear case of barratry had been shown, followed by a seizure by Spanish officials. The question presented was whether the proximate cause of the loss was the barratry or the seizure. In a well-reasoned opinion, the House of Lords concluded that the loss was caused by the seizure and not by the preceding barratrous acts. As Lord Blackburn stated (on pages 400–401):

> Now here they are "warranted free from capture and seizure and the consequences of any attempts thereat." It was argued that here they have not been warranted free from barratry. That is true, but the barratry would itself occasion no loss at all to the parties insured. If it had not been that the Spanish revenue officers, doing their duty (they were quite right in that respect), had come and seized the ship, the barratry of the captain in coasting along there, hovering as we should call it along the coast, in order that the small smuggling vessel might come and take the tobacco, would have done the assured no harm at all. The underwriters do undertake to indemnify against barratry; they do undertake to indemnify against any loss which is directly sustained in consequence of the barratry; and in this case, as I said before, I think the seizure was as direct a consequence of the barratry as could well be. But still, as Mr. Justice Field says, it was the seizure which brought the loss into existence—it was a case of seizure.

Lord Bramwell discussed the issue in these terms (at page 403):

> Now it is said here that the loss was not from the seizure but that in truth it was from the barratry; and it is ingeniously suggested by Mr. Tyser that the seizure was "an intermediate step," as he called it. But it was the ultimate and final step which occasioned the loss; and but for the payment of money the ship would have been confiscated, which would have been merely a following up of the seizure.

Lord Bramwell then added the following comment (at page 404):

> But then it is said that when barratry is the causa remota of the loss, it nevertheless may be relied upon without reference to the causa proxima. Now I will say nothing as to any general rule except to express a doubt as to whether what Lord Justice Brett said about that matter is perfectly correct. I have a misgiving about it; but I do not consider it necessary to determine anything of that sort here. It is possible that in some cases, where there has been barratry and a consequent loss within the perils insured against, you might call that a loss by barratry. In my opinion you cannot do so in this case. Call it an ultimate loss if you like, that ultimate loss was caused by a seizure, and that was warranted against.

Judge Thomsen adopted and applied the *Cory v. Burr* rule in the *Republic of China* case. He concluded that where barratry was one of the causes of the loss, recovery might be had if the ultimate cause were not excluded from coverage by an exclusion clause. 151 F.Supp. at 231. But he pointed out that "where the ultimate cause of the loss is excluded from coverage by a warranty or an exclusion clause, recovery may not be had on the grounds of barratry. *See Cory v. Burr, supra * * *.*" *Id.* at 231.

Plaintiffs contend first that Judge Thomsen "did misstate" the proximate cause rule which should be applied in a case such as the one before him. Plaintiffs argue that the proper rule was the one set forth in *Havelock v. Hancill*, 3 T.R. 277 (1789) and *Earle v. Rowcroft*, 8 E. 126 (1806). But these early English cases were in effect overruled by the *Cory v. Burr* decision. Both of these cases had been brought to the attention of Judge Thomsen since he cited *Earle v. Rowcroft* and since *Cory v. Burr* cited *Havelock v. Hancill.* Moreover, the question whether English or American law should be applied was also considered and discussed by Judge Thomsen in the *Republic of China* opinion. In this connection, Judge Thomsen said the following (151 F.Supp. at 226):

Indeed, the conflict of laws problem is more apparent than real. "The important thing is to secure uniformity of view in a commercial world, which now embraces and long has included more than one continent and more than one ocean." *Queen Ins. Co. of America v. Globe, etc., Co.,* D.C.S.D.N.Y., 278 F. 770, 781, *aff'd* 2 Cir., 282 F. 976, and 263 U.S. 487, 44 S.Ct. 175, 68 L.Ed. 402. The Supreme Court referred to the "special reasons for keeping in harmony with the marine insurance laws of England * * *." 263 U.S. 487, 493, 44 S.Ct. 175, 177. More recently the Supreme Court has stated: "It is true that we and other American courts have emphasized the desirability of uniformity in decisions here and in England in interpretation and enforcement of marine insurance contracts. Especially is uniformity desirable where, as here, the particular form of words employed originated in England. But this does not mean that American courts must follow House of Lords' decisions automatically. Actually our practice is no more than to accord respect to established doctrines of English maritime law." *Standard Oil Co. of New Jersey v. United States,* 340 U.S. 54, 59, 71 S.Ct. 135, 138, 95 L.Ed. 68. Applying these principles, I have considered precedents from both sides of the Atlantic.

Thus, it is apparent that Judge Thomsen in the *Republic of China* case adopted the *Cory v. Burr* rationale, fully appreciating that other earlier precedents had taken a different tack. Counsel have cited no authority indicating that *Cory v. Burr* is not still the rule in England for interpreting and enforcing marine insurance contracts. Certainly then, good reason exists for the adoption of a similar rule in the United States so that uniformity may be achieved.

Plaintiffs have also argued that Judge Thomsen's discussion of the proximate causation rule in the *Republic of China* case is mere dictum as applied to the facts of this case. This Court would disagree. As indicated early in the *Republic of China* opinion, the principal issue was whether the loss was caused by barratry or by seizure or by both "as those terms are used and understood in the marine insurance field." 151 F.Supp. at 215. Thus, it was necessary to ascertain the applicable law before the facts of the *Republic of China* case could be applied to that law. Accordingly, Judge Thomsen first concluded that *Cory v. Burr* stated the law to be applied, and that there could be no recovery if a barratry were followed by a seizure and if seizure were excluded from coverage. Once having determined the law to be applied, Judge Thomsen concluded that there had been no seizure insofar as the six vessels were concerned, while there had been a seizure as to the seventh. These determinations of fact were then applied to the *Cory v. Burr* rule and coverage was found as to six of the vessels but not as to the seventh.

It is also argued by the plaintiffs that the Fourth Circuit did not follow Judge Thomsen's ruling concerning the application of the proper rule of proximate causation to facts such as those here. Again, this Court would disagree. At page 185 of the Fourth Circuit opinion in the *Republic of China* case, Judge Soper said the following:

The respondent also relies on the decision in *Cory v. Burr,* 8 App.Cas. 393 (1883). In that case the captain of a ship, disregarding his obligation to the owners in order to serve his own ends, used the vessel in smuggling transactions, and while she was stopped at sea in order to transship the smuggled goods she was taken by a Spanish revenue cutter. It was held that the loss was caused not by the barratry of the master but by the seizure of the ship by the Spanish Government. This holding distinguishes the decision from the instant case where it has been found that the barratrous acts constituted the ultimate and efficient cause of the loss of the Hong Kong ships, since it was brought about by the voluntary acts of the masters and crews in possession and was not compelled by the superior forces of the Communist Government. This is the more clear in the case of the Hai Hsuan [the seventh vessel] since the defection of her crew began on the high seas beyond

any possible reach of the communist forces.

Relying on this portion of the opinion, plaintiffs argue that the Fourth Circuit did not follow *Cory v. Burr* but instead distinguished it. But, the *Cory* decision was distinguished by Judge Soper not on the law but on its facts. As Judge Soper pointed out, there was no seizure in the *Republic of China* case because there was no action taken by a government or by government officials. In both the pending case and *Cory v. Burr*, there was a seizure within the language of the insurance policy because the action had been taken by government officials. Had the Fourth Circuit wished to overrule Judge Thomsen's interpretation of the law and follow the earlier English cases, there was no need for it to consider whether the facts amounted to a seizure inasmuch as there would have been coverage whether or not the barratry was followed by a seizure.

██ A bitterly contested case involving in excess of $3 million, the *Republic of China* opinions were handed down some twenty-three years ago. Since then, there has not been a single reported opinion in this Court or in the Fourth Circuit questioning the principle of law established by *Republic of China* for determining whether a loss such as this one was proximately caused by barratry or by a later seizure. It must therefore be concluded that whatever the rule may be elsewhere, in this Circuit *Cory v. Burr* is controlling in a case such as this one. Accordingly, this Court finds and concludes that the loss of the TEHO was proximately caused by the yacht's seizure by Colombian officials and not by the earlier barratrous acts of McKay, Jr. Since loss by seizure is excluded by the express terms of the insurance policy, plaintiffs are not entitled to recover.[4]

## II

██ In Count II of their amended complaint, plaintiffs allege that they are entitled to judgment because of what Edinburgh did in denying coverage and thereafter. Whereas Count I seeks recovery for breach of contract, Count II is based on a theory of tort. Plaintiffs allege in Count II that defendant acted negligently and in bad faith in investigating the loss, in failing to assist plaintiffs in an attempt to recover the yacht, in failing to keep plaintiffs informed and in failing to exercise due diligence and reasonable skill after coverage was denied. In moving to dismiss Count II, defendant contends that no duty owed by it to the plaintiffs was breached. In opposing the motion to dismiss, plaintiffs have relied on several depositions and exhibits filed in this case. Accordingly, this Court will treat the pending motion to dismiss as a motion for summary judgment. *See* Rule 12(b), F.R. Civ.P.

Under Count II of the amended complaint, plaintiffs are asking this Court to recognize a new basis for liability in a case in which the insured was advised that a loss was not covered and in which the Court has found no coverage. Here, defendant knew from the outset that the loss of the TEHO had been the result of the yacht's seizure by the government of Colombia. Indeed, it was John D. Wells, Executive Vice President of Nautilus, who, on February 9, 1979, informed Edward W. White, Managing Director of Edinburgh, that the yacht had been seized by the Colombian government "for running pot." White immediately advised Wells that the loss was not covered under the policy. This was a preliminary denial, and the formal denial followed some three months later. Meanwhile, Edinburgh investigated the loss on its own and furnished certain information to the plaintiffs in an effort to assist them in recovering the TEHO.

In Count II, plaintiffs assert that even though defendant denied coverage from the outset and even though the loss in question may be excluded from the policy, they are still entitled to judgment under a theory of

4. In view of this Court's conclusion that the loss of the TEHO was not covered because of the "Exclusions" provisions of the policy, it is not necessary to consider whether plaintiffs are also barred from recovery because they violated the geographic limits of the policy.

tort because of what defendant did after it learned that the yacht had been seized. This Court concludes that no extra contractual duty of the type relied upon by plaintiffs was owed by Edinburgh to its insureds. No admiralty or other case involving marine insurance is cited by plaintiffs in support of their novel theory. Indeed, plaintiffs have cited not a single federal case which has recognized a duty of this sort. Some state cases have recognized a duty on the part of an insurer to deal fairly and in good faith with its insured. *See Gruenberg v. Aetna Life Insurance Company*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (Cal.1973) and cases cited therein. However, in those cases, the loss in question was covered by the insurance policy, and the issue was whether the insurance company failed to deal with the insured fairly and in good faith by refusing without proper cause to compensate the insured for the loss. *Id.*, 108 Cal.Rptr. at 485, 510 P.2d at 1037. Other jurisdictions, even where the loss is covered, have refused to recognize any such cause of action in tort resulting from allegations of an insurer's wrongful refusal or delay in settling a first-party claim. *Lawton v. Great Southwest Fire Ins. Co.*, 392 A.2d 576, 581 (N.H.1978).

In any event, even if such a cause of action in tort were to be recognized by this Court, plaintiffs would not be entitled to a recovery here. In this case, the loss was not covered by the insurance policy. Assuredly, the defendant should not be held liable for acts taken after it correctly interpreted the policy and advised its insured that there was no coverage. After denying coverage, representatives of Edinburgh did assist Nautilus and the Lubins in determining whether the TEHO could be recovered from the Colombian government. Commencing in the spring of 1979, Mr. Lubin himself undertook efforts to recover his yacht, contacting the Colombian Ambassador to the United States, who made inquiries through the Ministry of Justice in Colombia. After having been advised by the Colombian Ambassador that he had been granted rights of ingress and egress to survey the TEHO in Colombia, Mr. Lubin decided not to make a personal trip because of advice he received that under Colombian law, the owner of a yacht under circumstances such as these is presumed to be guilty for any violations of law with which the yacht might have been connected.

Plaintiffs complain that this and other information was passed along to Edinburgh, but that Edinburgh took no steps to recover the yacht from Colombia. The simple answer to this contention is that Edinburgh had no duty to take any action since there was no coverage. An insurer can hardly be expected to take steps to investigate and mitigate a loss when it has correctly concluded that the loss is not covered by the insurance policy in question. Plaintiff Lubin himself investigated the circumstances whereby steps might be taken to survey or recover his yacht and decided for reasons of his own not to go to Colombia.

For these reasons, this Court concludes that plaintiffs are not entitled to a recovery against defendant under Count II of the amended complaint. Defendant's motion to dismiss, treated herein as a motion for summary judgment, will therefore be granted.

### III

For the reasons stated, plaintiffs' motion for summary judgment is hereby denied; defendant's motion for summary judgment is hereby granted; and defendant's motion to dismiss Count II of the amended complaint, treated herein as a motion for summary judgment as to Count II, is hereby granted. Accordingly, judgment is hereby entered in this case in favor of the defendant, with costs.