**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff-Counter Defendant-Appellant,**

v.

**Gene L. CAVANAUGH, Cathy Cavanaugh, and Atlas Underwriters, Defendants-Counter Plaintiffs-Appellees.**

**No. 82–6064.**

United States Court of Appeals, Eleventh Circuit.

May 17, 1984.

Christian D. Keedy, Miami, Fla., for plaintiff-counter defendant-appellant.

John D. Kallen, Wm. E. Cassidy, Miami, Fla., for Gene and Cathy Cavanaugh.

Before HILL and HATCHETT, Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

United States Fire Insurance Company (U.S. Fire) brought this action for declaratory judgment against Gene and Cathy Cavanaugh, seeking a judgment that it was not liable for the damage suffered by the Cavanaughs' shrimp trawler, the "Serious Business." The Cavanaughs counterclaimed to recover for the loss. The district court entered judgment for the Cavanaughs and U.S. Fire appealed.

Gene and Cathy Cavanaugh were the owners of the "Serious Business" at the time it ran aground and burned on June 15, 1981. The Cavanaughs had purchased the trawler from Gene's father, Lennis, in August, 1980. During the time Lennis Cavanaugh owned the trawler and at all times, until its final voyage, Gene Cavanaugh had been the captain. In May 1981, Gene Cavanaugh was recovering from chicken pox and entered into a charter agreement with

* Honorable Clarence W. Allgood, U.S. District Judge from the Northern District of Alabama, sitting by designation.

William C. Ballard to take the "Serious Business" shrimping. Ballard was to operate the trawler between St. Augustine, Florida, and Brownsville, Texas, and was informed of a 150 mile navigational limit warranted in the insurance policy which covered the "Serious Business." Cavanaugh apparently hired Ballard primarily on his reputation, but did take him on a "shakedown" cruise prior to the trawler's departure on May 15, 1981. Ballard was to contact Cavanaugh if he had any problems or when he put in at port. When the trawler left Stock Island, Florida, on May 15, Ballard and two of Cavanaugh's experienced crew members were the only people on board.

On June 14, 1981, the Coast Guard notified the Cavanaughs that the "Serious Business" was aground and burning on the Bajo Neuvo Reef about 150 miles southwest of Jamaica. The next day, eight people were rescued from the water near the remains of the trawler. Ballard has not been seen nor heard from again.

The "Serious Business" was insured by U.S. Fire at the time it was purchased from Lennis Cavanaugh and that policy was renewed by Gene and Cathy Cavanaugh. The policy provided coverage for the "barratry of the masters and mariners and all other like perils . . . ." However, the trawler was covered only when it was being operated between Cape Hatteras, North Carolina, and Brownsville, Texas, and no further than 150 miles offshore. The Bajo Neuvo Reef is approximately 400 miles beyond the covered area.

U.S. Fire was advised of the loss, but denied coverage because the loss occurred outside the navigational limits of the policy and because of alleged misrepresentations by Cavanaugh.[1] The company cancelled the policy and attempted to return the prepaid premium.

In October, 1981, U.S. Fire instituted this action for a declaratory judgment on the insurance contract. The Cavanaughs counterclaimed, contending the loss was due to the barratry of Ballard and thus a covered loss. The district court found that the hiring of Ballard for the one fishing expedition did not constitute a change of management in violation of the insurance policy and that Cavanaugh had exercised due diligence to properly man the vessel. The court went on to find that there was no evidence that the Cavanaughs authorized, agreed to, or were in any way involved in Ballard's decision to operate the trawler beyond the 150 mile limit and concluded that that act amounted to barratry and was the proximate cause of the loss. Final judgment was entered in favor of the defendant, including prejudgment interest at the rate of 12% per year from the date of the loss.

On appeal, U.S. Fire contends that the district court erred: in finding that the policy was in force at the time of the loss; in determining that barratry was the proximate cause of the loss of the "Serious Business"; and in awarding prejudgment interest.

There is no dispute that the "Serious Business" was beyond the 150 mile limit when she ran aground and burned. U.S. Fire points to several cases which state that insurance coverage is suspended when a vessel goes beyond the navigational limits and that a loss during that time is not covered. *Robinson v. Home Insurance Co.*, 73 F.2d 3 (5th Cir.1931); *Canton Insurance Office v. Independent Transp. Co.*, 217 F. 213 (9th Cir.1914); *R & W Boat Rentals, Inc. v. Pennsylvania Insurance Co.*, 257 So.2d 448 (1st La.App.1972). These cases are distinguishable from the present case on one crucial point: in all of the cited cases the various warranties were breached by a voluntary act of the insured.

1. U.S. Fire contends that Gene Cavanaugh was in the process of negotiating the charter agreement with Ballard at the time he renewed the insurance, but represented that he was the captain and agreed to notify the insurer in the event of a change of management, which he

failed to do. They also contend that the insured failed to exercise due diligence to properly man the vessel since he knew nothing about Ballard and did not verify his ability to operate the vessel in open waters.

Such is not the case here. Had the Cavanaughs taken the trawler beyond the 150 mile limit or if it had been taken by another with the owner's knowledge or consent even if accidentally, then there would have been a breach of the warranty and there would have been no insurance coverage. The "Serious Business", however, was taken some 400 miles beyond the warranted limits by the unauthorized act of a third party in violation of both written and verbal agreements, an act against which the Cavanaughs were insured. What would have been a breach of warranty is not a breach in this case where the 150 mile limit was exceeded due to the barratrous acts of Ballard.

■ In finding that the actions of Ballard constituted barratry, this court adopts the district court's definition of barratry which follows the guidelines set forth by our circuit. Barratry can be defined as (1) an act committed by the master or mariners of a ship involving a deliberate and willful disobeyance of the owner's instructions, (2) an act committed by the master or mariners of a ship for some unlawful, dishonest, or fraudulent purpose, contrary to their duty to the owners, whereby the latter sustained an injury, or (3) every violation of duty by the master or mariners arising from gross and culpable negligence contrary to their duty to the owner. *See Darien Bank v. Travelers Indemnity Co.,* 654 F.2d 1015, 1019 (5th Cir.1981); *Fishing Fleet, Inc. v. Trident Insurance Co.,* 598 F.2d 925, 927 (5th Cir.1979).

Because this circuit has held that barratry covers gross and culpable negligence by the master or mariners, it is clear that the definition of barratry must also include deliberate and willful disobeyance by the master or mariners of an owner's oral or written instructions.

■ The proximate cause of the loss of the "Serious Business" was the grounding and burning on Bajo Neuvo Reef. In admiralty cases the "cause which is truly proximate is that which is proximate in efficiency." *Lanasa Fruit Steamship & Indemnity Co. v. Universal Insurance Co.,* 302 U.S. 556, 563, 58 S.Ct. 371, 374, 82 L.Ed. 422 (1937). Loss by grounding or fire was specifically covered under the insurance policy. Since barratry, grounding and fire were all covered perils and the act of barratry cannot operate to breach the warranty and void coverage, the decision of the district court that U.S. Fire is liable under the policy for the loss must be affirmed. To hold otherwise would be to find that one covered peril could operate to relieve the insurer of any loss which occurred from another covered peril.[2] On the issues of misrepresentation by the owners and failure to exercise due diligence to properly man the vessel, the evidence clearly supports the trial court's findings. The award of prejudgment interest is the rule in admiralty cases rather than the exception and this court finds no error on the part of the district court in so ordering.

AFFIRMED.

JAMES C. HILL, Circuit Judge, dissenting:

I dissent because the majority has misconstrued the role of barratry in this drama. The majority's result can be predicated only upon a conclusion that the captain's barratry *extended* the insurance cov-

---

**2.** The district judge followed reasoning similar to that used by the court in *Republic of China v. National Union Fire Insurance Co.,* 151 F.Supp. 211 (D.Md.1957), aff'd, 254 F.2d 177 (4th Cir. 1958), cert. denied, 358 U.S. 823, 79 S.Ct. 38, 3 L.Ed.2d 64 (1958):

[W]here barratry is one of the causes of the loss, if the ultimate cause (such as stranding or capture) is not excluded from coverage by a warranty or an exclusion clause, recovery may be had on the grounds of barratry, whether or not the ultimate cause of the loss was or was not a peril insured against ... but where the ultimate cause of the loss is excluded from coverage by a warranty or an exclusion clause, recovery may not be had on the grounds of barratry.

Id. at 231.

Although the fact situation in this case does not lend itself to a similar finding here, the principle of granting recovery where barratry is connected to the ultimate cause of the loss (here, fire) is the same.

erage. As I see it, the result of the barratry was the owner's *loss* of coverage. It was a grievous loss to the owner, but not one of the losses against which the policy provided coverage. The insurance policy did not provide coverage against the loss of its own coverage; it insured against loss of the vessel. In maritime matters, the insured may recover only if a peril covered under the policy proximately causes the loss of the vessel. In this case, the vessel was not lost as a proximate result of Ballard's barratry;[1] grounding proximately caused the loss of the vessel. The policy specifically does not cover losses caused by groundings (or other perils) occurring more than 150 miles offshore; therefore, the judgment of the district court should be reversed.

In holding that Ballard's barratry caused the loss of the vessel, the district court made the following findings of fact and conclusions of law:

Captain Ballard's barratry was the proximate cause of the loss of the vessel. *See Darien Bank, supra,* 654 F.2d at 1019–22; *Fishing Fleet, Inc., supra,* 598 F.2d at 927–28. His deliberate and willful misconduct directly caused the grounding, fire and destruction of the vessel. The cases cited by the Plaintiff/Counterdefendant for a contrary proposition are inapposite. Those cases, *Blaine Richards & Co. v. Marine Indemnity Insurance Company of America,* 635 F.2d 1051 (2d Cir.1980) and *Nautilus Virgin Charter, Inc. v. Edinburgh Insurance Co.,* 510 F.Supp. 1092 (D.Md. 1981), *aff'd without published opinion,* 673 F.2d 1314 (4th Cir.1981), involved detention or seizure of vessels, where the insurance policy specifically excluded such detention or seizure from coverage under the Free from Capture and Seizure

("F.C. & S.") Clause. The case *sub judice* involves no detention or seizure of the vessel such that a specific exclusion from coverage applies. The vessel was outside the territorial limits of the policy as a result of the barratry of the master, which is a covered loss under the "Perils" clause of the policy. Moreover, the Court notes that the following language from the *Blaine & Richards Co.* case:

At the same time, the single cause nearest to the loss in time should not necessarily be found to be the proximate cause. [Citation omitted.] Instead, in accord with the reasonable understandings and expectations of the parties, we must attempt to ascertain what the Supreme Court has referred to as the "predominant and determining" or the "real efficient" cause of the loss [Citations omitted.] Determination of proximate cause in these cases is thus a matter of applying common sense and reasonable judgment as to the source of the losses alleged.
635 F.2d at 1054–55.

Thus, the district judge concluded that barratry, and not running aground on the reef, legally caused the loss. The opinion of the majority apparently concludes that, although *grounding* caused the loss, the barratry extended the coverage beyond the warranted limit. Both the district court and the majority are, I believe, in error.

Before I analyze the cases cited by the district judge and by the parties, it will be helpful precisely to determine and define the issue presented.[2] The policy covers specified perils including barratry and grounding. The policy does not, however, provide coverage for the specified perils if the territorial warranty (150 miles offshore) is breached.[3] Despite the majority's

---

**1.** I accept the majority's characterization of Ballard's actions as barratry for purposes of this dissent; however, because of my resolution of the case, I see no need to pass on that issue and therefore express no opinion as to the propriety of the majority's conclusion.

**2.** As Chief Justice Bleckley of the Georgia Supreme Court noted, "when the right point of

view is discovered, the problem is more than half solved." *Ellison v. Georgia Railroad Co.,* 87 Ga. 691, 706–07, 13 S.E. 809 (1891).

**3.** The policy provides, in pertinent part, "warranted navigation confined to U.S. coastal and inland tributary waters from Cape Hatteras, N.C. to Brownsville, Texas, both inclusive, but not to exceed 150 miles offshore therefrom."

opinion, the grounding cannot be covered because it clearly occurred outside the policy's 150-mile limit. Under the clear precedent in this circuit a breach of warranty precludes recovery even though a "covered" peril otherwise caused the loss. *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 201 F.2d 833 (5th Cir.1953), *rev'd on other grounds*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1954). In *Wilburn*, the policy contained a warranty that the vessel would only be used as a pleasure craft. The insured party breached this warranty; and, even though the vessel was destroyed by fire (a covered peril), the court held that the breach of warranty precluded recovery. *Id.* at 836. This holding follows the often-stated rule that warranties in contracts of marine insurance must be literally and strictly enforced. *See id.; see also* Arnould's Law of Marine Insurance and Average ¶¶ 682, 683, 692 (16th ed.1981).[4]

Both the Fifth Circuit's decision in *Wilburn* and this case involve a loss caused by a covered peril (grounding or fire). In *Wilburn*, the court held that the breach of the pleasure-craft warranty precluded recovery; the same logic should apply in this case to preclude recovery under the grounding clause because of the warranty that the vessel would remain within 150 miles of the shore. Of course, the "cause" of the breach of the warranty in this case was arguably a peril insured against (barratry). Nevertheless, the ultimate cause of the loss was excluded by the warranty; and numerous cases hold that although barratry might be the remote cause, no

recovery is possible when the direct cause of the loss was excluded by warranty. *See, e.g., Republic of China v. National Union Fire Insurance Co.*, 151 F.Supp. 211 (D.Md.1957), *aff'd*, 254 F.2d 177 (4th Cir.), *cert. denied*, 358 U.S. 823, 79 S.Ct. 38, 3 L.Ed.2d 64 (1958); *Nautilus Virgin Charters v. Edinburgh Insurance Co.*, 510 F.Supp. 1092 (D.Md.1981), *aff'd mem.*, 673 F.2d 1314 (4th Cir.1981), *cert. denied*, 456 U.S. 945, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982); *John Cory & Sons v. Burr*, [1883] A.C. 393.

These cases rest on the doctrine of *causa proxima non remota spectatur*,[5] which governs proximate cause in admiralty insurance cases; cases dealing with proximate cause in the negligence context are for the most part irrelevant. *Blaine Richards & Co. v. Marine Indemnity Insurance Co.*, 635 F.2d 1051, 1054 (2d Cir.1980). As the district court noted, the *Blaine Richards* court stated that the "single cause nearest to the loss in time should not necessarily be found to be the proximate cause," citing *Lanasa Fruit Steamship & Indemnity Co. v. Universal Insurance Co.*, 302 U.S. 556, 563, 58 S.Ct. 371, 374, 82 L.Ed. 422 (1937). As both the *Lanasa* court and the *Blaine Richards* court stated, however, the point is not that any remote cause is sufficient, but that the "cause which is truly proximate is that which is proximate in efficiency." *Lanasa*, 302 U.S. at 563, 58 S.Ct. at 374; *Blaine Richards*, 635 F.2d at 1054; *see also Stan-*

---

**4.** The Supreme Court's reversal of the Fifth Circuit's decision in *Wilburn* does not render *Wilburn* invalid as applied to the present case. *See* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1954). In *Wilburn*, the insured contended that a Texas statute invalidated the general maritime law on enforcement of warranties. The statute required a breach of warranty to be causally connected to the loss before it would bar recovery. The Fifth Circuit held the Texas statute to be inapplicable, 201 F.2d at 836–37; however, the Supreme Court held that the statute would apply absent preemptive federal statutory or judge-made law, 348 U.S. at 321, 75 S.Ct. at 374. The *Wilburn* holding (of the Supreme Court)

has been limited somewhat by the Court, *see Kossick v. United Fruit Co.*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); and, in this case, neither party has indicated that Florida law would somehow change the result under general maritime law. We may thus assume that "Florida would draw heavily on maritime law in fashioning its own principles," *Gulfstream Cargo, Ltd. v. Reliance Insurance Co.*, 409 F.2d 974 (5th Cir.1969), and accept *Wilburn* as binding.

**5.** The immediate not the remote cause is considered.

*dard Oil Co. v. United States*, 340 U.S. 54, 58, 71 S.Ct. 135, 137, 95 L.Ed. 68 (1950).[6]

Simply stating the doctrine of *causa proxima non remota spectatur* does not, however, quickly allow resolution of the issue presented in this case. There is authority, although its weight, effect, and validity may be questioned, that the efficient cause doctrine does not apply in cases of barratry, but that more remote causes may be considered. *See generally* Arnould's Law of Marine Insurance & Average* ¶ 765 (16th ed. 1981). Although Arnould's treatise states that the barratry exception is "well-established," its existence has been questioned by the House of Lords, *see John Cory & Sons v. Burr*, [1883] A.C. 393, 398 (Blackburn, L.J.),[7] and, as the treatise states, the exception may be "explained" by other factors, thus rendering its applicability unclear. Arnould's ¶ 765. That somewhat ancient dispute need not be resolved here, however, be-

cause, as the court stated in *Republic of China v. National Union Fire Insurance Co.*, 151 F.Supp. 211 (D.Md.1957), *aff'd*, 254 F.2d 177 (4th Cir.), *cert. denied*, 358 U.S. 823, 79 S.Ct. 38, 3 L.Ed.2d 64 (1958), where barratry

> is one of the causes of the loss, if the ultimate cause (such as stranding or capture) *is not excluded from coverage by a warranty or an exclusion clause*, recovery may be had whether or not the ultimate cause of loss was or was not a peril insured against.... *But where the ultimate cause of the loss is excluded from coverage by a warranty or an exclusion clause, recovery may not be had on the grounds of barratry.*

151 F.Supp. at 231 (citations omitted) (emphasis added); *see also Nautilus Virgin Charters v. Edinburgh Insurance Co.*, 510 F.Supp. 1092, 1097 (D.Md.1981) (quoting *Republic of China*), *aff'd mem.*, 673 F.2d

---

6. The *Lanasa* Court quoted the following statement by Lord Shaw, which aptly explains the notion of proximate cause.

> To treat proxima causa as the cause which is nearest in time is out of the question. Causes are spoken of as if they were as distinct from one another as beads in a row or links in a chain, but—if this metaphysical topic has to be referred to—it is not wholly so. The chain of causation is a handy expression, but the figure is inadequate. Causation is not a chain, but a net. At each point influences, forces, events, precedent and simultaneous, meet; and the radiation from each point extends infinitely. At the point where these various influences meet it is for the judgment as upon a matter of fact to declare which of the causes thus joined at the point of effect was the proximate and which was the remote cause.
>
> What does 'proximate' here mean? To treat proximate cause as if it was the cause which is proximate in time is, as I have said, out of the question. The cause which is truly proximate is that which is proximate in efficiency. That efficiency may have been preserved although other causes may meantime have sprung up which have yet not destroyed it, or truly impaired it, and it may culminate in a result of which it still remains the real efficient cause to which the event can be ascribed.

*Leyland Shipping Co. v. Norwich Union Fire Insurance Society*, [1918] A.C. 350, 369 (House of Lords).

7. Lord Blackburn stated:

> A passage was cited from the last edition of Arnould on Insurance, which I now find was in the first edition by Sir Joseph Arnould, it is in vol. ii., p. 838 of the first edition. He has there laid down that whilst it is very true that the general rule is that in insurance you look to the proximate cause and not the remote one, there is an exception in the case of barratry and that the remote cause may be looked to there. I can only say that I think there is no other authority for such a rule; and though certainly Mr. Justice Field and Lord Justice Brett seemed to suppose naturally on the authority of that statement in the textbook, that this was a rule of insurance law, I am at present advised to not think that it is. The very instances which are given in the passage from Arnould are instances in which the Court thought rightly or wrongly (I think rightly) that the cause of loss was barratry, and that the consequence for which the parties were entitled to be indemnified was not a remote consequence. That is all I say upon that part of the subject. I am merely putting in a protest against what may be hereafter cited as being an established principle of insurance law. For my own part I do not think that it is.

Lord Bramwell also addressed the issue. *See infra* note 5.

1314 (4th Cir.1981), *cert. denied,* 456 U.S. 945, 102 S.Ct. 2012, 72 L.Ed.2d 468 (1982).[8]

The instant insurance policy contains an express warranty by the Cavanaughs that the ship will not be navigated outside the 150-mile limit. It is clear that the barratry must be the efficient cause of loss to sustain recovery because if the grounding caused the loss, under the rule I have just stated, "the ultimate cause [would be] excluded from coverage by a warranty...." *Republic of China,* 151 F.Supp. at 231. The district court apparently disagreed, and attempted to distinguish *Nautilus Virgin Charters* and *Blaine Richards* on the grounds that, in those cases, the proximate cause of the loss was a seizure, which was specifically excluded from coverage under a standard free of capture and seizure (f.c. & s.) clause. *See* 635 F.2d at 1055; 510 F.Supp. at 1097. Cases in which barratry is followed by seizure by a foreign power or the equivalent are certainly more common than cases such as this one. *See, e.g., John Cory & Sons v. Burr,* [1883] A.C. 393; *Ope Shipping, Ltd. v. Allstate Insurance Co.,* 521 F.Supp. 342 (S.D.N.Y.1981); *aff'd in part, rev'd in part,* 687 F.2d 639 (2d Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 1523, 75 L.Ed.2d 946 (1983); *Flota Merchants Dominica v. American Manufacturers Mutual Insurance Co.,* 312 F.Supp. 58 (S.D.N.Y.1970). Indeed, I have located only one case dealing with a territorial limitation on coverage; and, in that case, the court did not reach the issue but disposed of the case relying on an f.c. & s. clause. *See Nautilus Virgin Charters,* 510 F.Supp. at 1094 & 1100 n. 4. I nevertheless perceive no distinction between a loss not covered by virtue of an f.c. & s. warranty (or thereby expressly excluded) and a loss not covered by a territorial warranty. Therefore, unless Ballard's bar-

ratry was the efficient cause of the loss, the Cavanaughs may not recover.

In concluding that barratry proximately caused the loss of the ship, the district court relied on *Darien Bank v. Travelers Indemnity Co.,* 654 F.2d 1015 (5th Cir. Unit B 1981) and *Fishing Fleet, Inc. v. Trident Insurance Co.,* 598 F.2d 925 (5th Cir.1979). (See quoted excerpt *supra.*) The Cavanaughs staunchly support this reliance in their brief; however, I do not find these cases to be controlling. In *Darien Bank,* we held the evidence sufficient to support a finding of barratry, *see Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969) (*en banc*), without addressing the precise issue presented here. In *Fishing Fleet,* barratry caused (in a general sense) the loss of the ship, but the Mexican government later seized the wrecked ship. 598 F.2d at 927. The insurance company denied coverage under the standard f.c. & s. clause; however, we noted that the "total constructive loss" occurred before the seizure and held against the insurer. *Id.* at 929. The *Fishing Fleet* case is not dispositive because the barratry here (assuming that Ballard's exceeding the 150-mile limit constituted barratry) did not result in the loss under the efficient cause standard: when Ballard sailed outside the limit, the ship remained whole and sound.

In this case, it is clear beyond doubt that the efficient cause of the ship's loss was grounding on the Bajo Nuevo reef. An examination of the efficient cause analysis employed in two of the cases cited above that deal with f.c. & s. clauses illustrates and supports this conclusion. In *Nautilus Virgin Charters,* the captain committed barratry by using the vessel to smuggle marijuana; during the course of the smuggling voyage, the Columbian government

---

**8.** Lord Bramwell's statement in *Cory* is in accord:

But then it is said that when barratry is the causa remota of the loss, it nevertheless may be relied upon without reference to the causa proxima. Now I will say nothing as to any general rule except to express a doubt as to whether what Lord Justice Brett said about that matter is perfectly correct. I have a misgiving about it; but I do not consider it

necessary to determine anything of that sort here. It is possible that in some cases, where there has been barratry and a consequent loss within the perils insured against, you might call that a loss by barratry. In my opinion you cannot do so in this case. Call it an ultimate loss if you like, that ultimate loss was caused by a seizure, and that was warranted against.

seized the vessel. The court held that the seizure, not the barratry, proximately and efficiently caused the loss. 510 F.Supp. at 1100; *see also Cory,* [1883] A.C. 393 (reaching same result on remarkably similar facts). The analysis here is identical. Arguably, neither the vessel in this case nor the vessel in *Nautilus Virgin Charters* would have been lost or seized had the barratry not occurred. It is nevertheless clear that barratry did not proximately cause the loss in either case, but that the cause of the loss was a peril excluded or warranted against.

The Cavanaughs contend in their brief and the majority holds that, because the policy here expressly covers grounding, U.S. Fire remains liable. This is not the proper analysis. The grounding occurred outside the 150-mile limit of coverage and so was not covered. The Cavanaughs contend that Ballard's barratry renders the 150-mile limit without effect; however, this cannot be the correct result. When barratry breached the warranty, the insurance coverage, not the vessel, was lost. *See supra* discussion of *Wilburn Boat Co.; see also Robinson v. Home Insurance Co.,* 73 F.2d 3 (5th Cir.1934) (breach of warranty voids coverage), *cert. denied,* 294 U.S. 712, 55 S.Ct. 508, 79 L.Ed. 1246 (1935).[9] The Cavanaughs could recover had barratry caused the loss of the ship, but the policy provided no coverage for the loss of coverage. Indeed, it seems to me that the language quoted by the majority opinion (in note 2) supports *only* this conclusion in stating that "where the ultimate cause of the loss is excluded from coverage *by a warranty* or an exclusion clause, recovery may not be had on grounds of barratry."

*Republic of China,* 151 F.Supp. at 271 (emphasis added). Here, the insured warranted that the vessel would not be outside the 150-mile limit. This provision—a warranty—voids coverage upon its breach *no matter what the cause of the breach. See* Arnould's ¶ 687 ("[e]ven the direct and irresistible operation of a peril expressly insured against in the policy is no excuse for noncompliance") ¶ 692 (citing cases).[10] The majority's attempted distinction of this rule on the basis that the insured in this case did not breach the warranty by a voluntary act is without merit. We are dealing here not with a tort but with a contract. Contracts law, from time immemorial, has predicated recovery on a strict liability theory. *See id.* Thus, it does not matter that it was arguably not the "fault" of the Cavanaughs that Ballard's actions breached the warranty.

The distinction between loss of ship and loss of coverage underlies and explains the earlier analysis of the law of efficient cause in barratry cases and its application when the loss is either excluded or subject to a warranty. If barratry extended coverage in either case, the result would be insurance against perils not contemplated by the insurance company in issuing its policy. Anything and any voyage would be covered. I have little doubt that Lords Bramwell and Blackburn were mindful of this problem when they stated in the *Cory* case that they doubted the validity of a rule allowing recovery for remote causes in all barratry cases. *See supra* notes 3 & 4 (quoting Blackburn & Bramwell).[11]

I would hold that the district court's findings are without support in the record or

---

9. The *Robinson* court stated:

> A warranty as to the place where the policy stipulates the insured vessel is to be located during the period covered by the policy makes the right of the insured to recover for damages or loss dependent upon the vessel being at the stated place when the damage or loss occurred; and if damage or loss occurs when the vessel is at a place other than the one named in the policy, the insured has no right to recover on the policy, though that place is quite as safe as the one named in the policy.

73 F.2d at 4.

10. The majority cites no cases to support their holding that "barratry cannot operate to breach the warranty"; and, as Arnould's treatise demonstrates, the majority's position is without support. *See also Republic of China,* 151 F.Supp. at 231.

11. As Arnould's treatise observes, the broad effect of the exception (which is an exception to an exception, in reality) in most cases will simply result in the general rule of efficient cause being applied. Arnould's ¶ 765.

induced by an erroneous view of the law. *See Noritake Co. v. M/V Helenic Champion,* 627 F.2d 724, 727 (5th Cir.1980); *China Union Lines, Ltd. v. A.O. Andersen & Co.,* 364 F.2d 769, 795 (5th Cir.1966), *cert. denied,* 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805 (1967).